EDWIN H. PRATT

*v.*

PARMELIA J. DAVIS.

*Opinion filed December 22, 1906.*

1. PLEADING—*when a declaration in trespass need not negative leave or license from third party.* A declaration alleging that the surgical operation relied upon as a trespass was without the consent of the patient need not negative the fact that it was without the consent of anyone authorized to represent the patient, but if it makes such an averment and the defendant files a plea of leave and license, it is not harmful error for the court to hold, as a proposition of law, that the burden is on the defendant to prove leave and license.

2. MEDICINE AND SURGERY—*consent of patient is ordinarily a prerequisite to operation.* The consent of the patient should be a prerequisite to a surgical operation where he is in possession of his mental faculties and well enough to consult about his condition without dangerous consequences to his health, and where no emergency exists making it impracticable to confer with him or requiring immediate action for the preservation of life or limb.

3. SAME—*what does not amount to consent to removal of uterus.* The fact that the husband of an insane woman, when a first operation to which he had consented did not relieve her condition, obeys the surgeon's direction to send her back for "the finishing work," no explanation being made as to what it would be, does not amount to a consent to an operation upon the wife by which the ovaries and uterus were removed, there being nothing to show that he understood what the operation was to be.

4. SAME—*when consent to the removal of uterus is not implied.* Consent to the removal of the uterus in a second operation cannot be implied, upon the ground of correct surgical practice, from alleged consent to the removal of the ovaries, which consent is claimed to appear from a declaration in a former suit which averred consent to removal of the ovaries in the first operation, where there is nothing to show consent to the second operation in which the ovaries were in fact removed, the first operation being for another purpose.

5. APPEALS AND ERRORS—*when question of correctness of refused proposition of law need not be decided.* Whether a refused proposition of law is a correct statement of the law need not be decided by the Supreme Court on appeal, where the proposition was refused because not applicable to the evidence.

6. SAME—*when errors in admitting evidence will not reverse.*
Errors in overruling objections to testimony elicited from medical
witnesses in answer to hypothetical questions are not ground for re-
versal, where the trial was without a jury and there is sufficient
competent evidence to justify the finding of the court.

7. DAMAGES—*the law infers pain and suffering from personal
injury.* Pain and suffering following the removal of the uterus in
a surgical operation is inferred as a matter of law and does not re-
quire direct proof.

APPEAL from the Appellate Court for the First District;—
heard in that court on appeal from the Circuit Court of Cook
county; the Hon. M. F. TULEY, Judge, presiding.

WALKER & WILLIAMS, and ROY C. MERRICK, for ap-
pellant:

The relations existing between appellant and appellee
were such as to confer upon appellant, as a matter of law,
authority to perform the operation complained of, and the
burden of proof to show want of consent was upon appellee.
*McClallen* v. *Adams,* 19 Pick. 333; *State* v. *Housekeeper,*
70 Md. 162; *Littlejohn* v. *Arbogast,* 95 Ill. App. 605.

A physician or surgeon, by accepting employment as
such, undertakes and is bound to exercise his best judgment
in diagnosing an ailment or injury and in deciding upon and
pursuing the course of treatment to be adopted, and therefore
a physician or surgeon is liable in damages whenever he fails
to give to a case which he undertakes, such care and treat-
ment as are dictated by his best judgment. 22 Am. & Eng.
Ency. of Law, 798, and cases in note 7; *Morris* v. *Despain,*
104 Ill. App. 452; *Barnes* v. *Means,* 87 Ill. 375; *Carpenter*
v. *Blake,* 10 Hun, 358.

The burden of proof was upon appellee to show want of
authority in appellant for the performance of the operation,
the same as if the complaint were of malpractice. *McKee* v.
*Allen,* 94 Ill. App. 147; *Sims* v. *Parker,* 41 id. 284.

No actual damages having been shown in the case, it was
error for the court below to assess punitive damages, when

it was not alleged by the pleadings or shown by the evidence that the act of the defendant was malicious, wanton, oppressive or fraudulent. *Hyatt* v. *Adams,* 16 Mich. 180; *Fisher* v. *Niccols,* 2 Ill. App. 484; *Wilkinson* v. *Searcy,* 76 Ala. 176; *Railway Co.* v. *Hoeflich,* 62 Md. 301; *Chicago* v. *Martin,* 49 Ill. 241; *Baxter* v. *Campbell,* 97 N. W. Rep. 386.

If a patient is in such condition that she cannot be made to understand the necessity of the proposed treatment, her physician or surgeon may co-operate with the patient's immediate family, and may resort to reasonable force to carry his treatment into effect. *Littlejohn* v. *Arbogast,* 95 Ill. App. 605.

Where there is a want of a definite and prescribed mode or system of treating an injury, and there are differences among practical and skilled surgeons with reference to it, a surgeon may exercise his own best judgment, employing the methods his experience has shown him to be the best, and in such case a mere error of judgment as to it will not render him liable. *VanHooser* v. *Berghoff,* 90 Mo. 487.

SAMUEL J. HOWE, for appellee:

Appellant filed a plea of leave and license, which put in issue the question whether the trespass complained of was committed with appellee's consent. *Ragain* v. *Stout,* 182 Ill. 645.

The recovery is sought upon the ground that an act was done by the surgeon which he not only had no right to do but which he had been forbidden to do, and the defense was a plea of leave and license. Under such plea the burden was on him to show such leave and license, and failing so to do that defense fails. 1 Stephen on Evidence, art. 95; Jones on Evidence, secs. 174-176; 1 Greenleaf on Evidence, sec. 79; *Chandler* v. *Smith,* 70 Ill. App. 658; Wigmore on Evidence, par. 2486.

In an action for damages arising from the performance of a surgical operation alleged to have been without the con-

sent of the patient, where the defendant admits that the plaintiff herself did not consent and relies upon the defenses that she was not mentally capable of giving consent and that her husband consented to the operation, the defendant must establish these two affirmative claims by the greater weight of the evidence.   Jones on Evidence, sec. 179; *Life Ass.* v. *Powell,* 79 Ill. App. 482; *Chandler* v. *Smith,* 70 id. 658; *Messmore* v. *Larson,* 86 Ill. 268.

There was no allegation in the pleadings nor any attempt to prove want of skill in the operation.   The grounds of action are, that the operation was performed at all, and for the pain and suffering and the effects which followed the operation, and which appellant, skilled as he was, must have known were the probable results of the operation.   For a trespass to the person damages are inferred by the law.   1 Sutherland on Damages, pp. 9-11, 766;  1 Sedgwick on Damages, secs. 97, 104;  *Daryo* v. *Valkenburg,* 5 Hill, 242;  *Baldwin* v. *Railroad Corporation,* 4 Gray, 333.

Where there is such fraud, oppression, willfulness, wantonness or recklessness as in law amounts to malice, punitive or vindictive damages are allowable.   *Wilkinson* v. *Searcy,* 76 Ala. 176;  *Railroad Co.* v. *Hoeflich,* 62 Md. 300.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from a judgment of the Appellate Court for the First District affirming a judgment of the circuit court of Cook county in favor of appellee and against appellant, for the sum of $3000, in an action for trespass to the person.

Appellant is a physician in the city of Chicago, and at the time of the wrong charged was engaged in conducting a sanitarium on Diversey boulevard.   Appellee, a married woman about forty years of age and a resident of the same city, came to this sanitarium for treatment for epilepsy in

May, 1896. She had been subject to epileptic seizures for a period of fifteen years, but up to this time she had been able to perform her household duties and had borne four children, three since she first exhibited symptoms of epilepsy. The seizures had gradually been increasing in frequency. Following each of them she would be very weak in body and dazed and uncertain in mind for several hours. The evidence of those who knew her in her daily life is generally to the effect that her mind, except during the periods immediately following these attacks, was normal. Appellant made an examination of the pelvic organs and found that the uterus was contracted and lacerated and that the lower portion of the rectum was diseased. On May 13, 1896, he operated for these difficulties. Thereafter she remained in the sanitarium without improvement several weeks and then returned home. On July 29, 1896, her brother-in-law, at request of her husband, took her again to the sanitarium, and on the next day appellant performed a second surgical operation upon her, removing her ovaries and uterus. She continued at the sanitarium until the eighth day of August, 1896, and then was removed to her home. Neither operation was successful, so far as improving her health was concerned. She grew gradually worse mentally, and on August 25, 1898, was adjudged insane and sent to the State asylum at Kankakee, and was not a witness in the trial of this case.

The cause of action is based on the removal of the uterus at the second operation. It is not claimed that the operation was unskillfully performed, but that it was performed without the authority or consent of appellee and constituted a trespass to her person.

The declaration, so far as now material, averred that appellee had placed herself under the care of appellant, and that he, without her consent or the consent of any one authorized to act for her, anæsthetized her and removed the uterus. Appellant interposed the general issue and a special plea of leave and license for doing the acts complained of.

To the special plea a replication was filed denying the leave
and license.

There is no pretense that appellee herself consented to
the removal of the uterus. In fact, appellant himself testi-
fies that he told Mrs. Davis just enough about her condition
and what he proposed to do, to get her consent to the first
operation, and says, quoting his own language: "I worked
her deliberately and systematically, taking chances which she
did not realize the full aspect of,—deliberately and calmly
deceiving the woman; that is, I did not tell her the whole
truth." And referring to the first operation he says: "She
knew that the womb was to be operated upon and she was
willing that should be done. Consent for further work was
not obtained." The record does not disclose the circum-
stances under which the anæsthetic was administered prior
to the second operation.

Appellant, however, contended that the appellee was so
mentally unsound as to be incapable of consenting or of giv-
ing intelligent consideration to her condition and that her
husband authorized the second operation. Whether appel-
lee was then mentally incapable of consenting was a question
as to which the evidence was conflicting.

The trial court held a proposition of law stating that the
burden of proof was upon the appellant to show leave and
license, and it is said that this was improper in view of the
averments of the declaration. If the declaration made nec-
essary, proof of the fact that the operation was performed
without the consent of appellee or some one who under the
law could act for her, the plea setting up leave and license was
plainly useless. Ordinarily, where the patient is in full pos-
session of all his mental faculties and in such physical health
as to be able to consult about his condition without the con-
sultation itself being fraught with dangerous consequences
to the patient's health, and when no emergency exists mak-
ing it impracticable to confer with him, it is manifest that
his consent should be a prerequisite to a surgical operation.

224—20

Where the *narr.* shows the act to have been a trespass to the person or avers it to have been without the consent of the patient, it would seem to be unnecessary to go farther and negative the fact that some other person lawfully authorized to act for the patient consented. The question of the consent of such other person, if in the case, might well be left to be presented by a plea in bar.

We have carefully reviewed the evidence as abstracted, and are satisfied that it does not tend to show that the husband consented to the second operation. He testified that he did not, and that when he first took his wife to the sanitarium appellant told him the operation would be a trifling one, and appellant says that while he may have said this, "Davis said he was willing that I should do anything I thought necessary, only he made the request that I do as little as possible," and that appellant then told Davis, in substance, that two operations might be necessary. Following that conversation the first operation was performed and later the woman went home. While she was at home, appellant says, "Mr. Davis, plaintiff's husband, told me she was no better. I told him to bring her back for the finishing work. I did not tell him what the finishing work would be. I had but one comprehensive talk with him; that was the time he was there with the plaintiff." These two conversations are relied upon by appellant as authority given by the husband for the second operation.

Without deciding what legal effect should be given to the husband's request or consent that a grave surgical operation be performed upon his insane wife, we think it manifest that the authority given by the husband in the conversation first above quoted from appellant's testimony was exhausted when the first operation was performed and the patient taken away. While it is true that appellant says he told the husband in that conversation that he could not tell the extent of the surgery that would be necessary and says that Davis gave him *carte blanche* to do whatever he saw fit, it is yet

apparent that neither then contemplated that the wife would be taken home after the first operation and later brought a second time to the sanitarium for the purpose of undergoing a second operation, and we think it equally apparent from appellant's testimony that the husband did not, at the time he was directed to bring his wife again to appellant for treatment, understand that any such operation as the removal of the ovaries and the uterus was to be performed, and that the mere fact that he, after that conversation, had his brother take appellee to the sanitarium is not to be regarded as tending to show consent to surgery of that character.

As appellee did not consent and the evidence does not tend to show consent given by the husband, it is unnecessary to determine whether the holding of the trial judge to which we have above adverted was correct in the anomalous state of the pleadings. In any event it was harmless.

Appellant then contends that in the absence of express authority to remove the uterus the law will imply the necessary consent from the fact that consent was, as he says, obtained for the removal of the ovaries.

Before bringing this suit appellee instituted a former suit against appellant, which seems to have been disposed of without any determination of the rights of the parties. In that suit the declaration, which was filed on September 11, 1896, averred that the ovaries had been, with the consent of appellee, removed at the first operation upon the promise of appellant that their removal would cure plaintiff, but that their removal, instead of alleviating her condition, aggravated her troubles, and that she thereafter returned to the sanitarium, and that appellant then, without her consent or that of her husband, removed the uterus. In this suit the only claim is for damages occasioned by the removal of the uterus, and in the course of the trial of the case now at bar counsel for appellee stated that he was claiming nothing on account of the removal of the ovaries.

Appellant argues that it appears from the facts thus recited that consent was obtained for the removal of the ovaries, and that correct surgical practice requires that when the ovaries are removed the uterus should also be removed, and that consent for the removal of the ovaries having been obtained, the right to remove the uterus followed.

Appellee, by her brief, says that consent was given for the first operation, and that when she brought the first suit she erroneously believed that the ovaries were removed at that operation. Be this as it may, the declaration in the first suit does not estop appellee to show that she never consented to their removal, and as there is no evidence which tends to show that any permission was obtained for the second operation, when they were in fact removed, there is therefore nothing to raise the implication in question.

It is also urged that consent is to be implied from the relation of the parties, and the following proposition of law was submitted as embodying that defense:

"The court holds, as a proposition of law, that when a patient places herself in the care of a surgeon for treatment without instructions to the surgeon or limitations upon his authority, she thereby, in law, consents that he may perform such operation as in his best judgment, care and skill is necessary, proper and essential to her welfare, and in case the surgeon performs an operation upon the plaintiff, and there is no complaint against the surgeon for want of the exercise of care and skill, there can be no recovery."

The court held this good as an abstract proposition of law but did not regard it as controlling here, for the reason, as we must assume, that the evidence did not show a state of facts that made this proposition determinative of the controversy. We are therefore not called upon to decide whether this was a correct statement of the law.

Complaint is made of the action of the court in overruling objections to testimony elicited by appellee from her expert medical witnesses in answer to hypothetical questions.

This was a trial without the intervention of a jury, and errors in this regard, if they exist, do not require reversal, as there is in the record abundant competent evidence to justify the finding of the court. *Merchants' Despatch Transportation Co.* v. *Joesting,* 89 Ill. 152.

It is next urged that the evidence shows no actual damages; that the judgment must therefore be made up of nominal damages and exemplary damages, and that this is not a proper case for the infliction of a penalty, wherefore the judgment should be reversed.

The claim that there is no proof of actual damages is based upon this statement found in appellant's argument: "There is nowhere in the record a syllable showing any pain or suffering as a result of the removal of the uterus."

Some facts require no direct proof. That pain and suffering follow the removal of the uterus is one of such facts. The law infers pain and suffering from personal injury. 1 Sutherland on Damages, (1st ed.) p. 766.

Further objections are made to the action of the court in passing upon the propositions of law submitted. These objections, in so far as they are worthy of serious consideration, are disposed of by what has already been said in this opinion.

Where the patient desires or consents that an operation be performed and unexpected conditions develop or are discovered in the course of the operation, it is the duty of the surgeon, in dealing with these conditions, to act on his own discretion, making the highest use of his skill and ability to meet the exigencies which confront him, and in the nature of things he must frequently do this without consultation or conference with any one, except, perhaps, other members of his profession who are assisting him. Emergencies arise, and when a surgeon is called it is sometimes found that some action must be taken immediately for the preservation of the life or health of the patient, where it is impracticable to obtain the consent of the ailing or injured

one or of anyone authorized to speak for him. In such event the surgeon may lawfully, and it is his duty to, perform such operation as good surgery demands, without such consent. The case before us, however, does not fall within either of these two classes.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.* ·