## KING v. CARNEY.

No. 10575—Opinion Filed Jan. 17, 1922.

Rehearing Denied Feb. 14, 1922.

(Syllabus.)

1. **Physicians and Surgeons — Surgical Operations—Scope—Implied Authority.**

The general directions of a patient to his surgeon authorizing him to perform an operation for the cure of a certain specific physical ailment not only authorize the surgeon to operate, but by clear implication authorize him to diagnose the case for the purpose of discovering for himself the exact cause of the malady he is called upon to treat and to make whatever initial exploratory incisions may be necessary for this purpose.

2. **Same.**

If, in the course of an operation to which the patient consented, the physician discovers conditions not anticipated before the operation was commenced, and which if not removed will endanger the life or health of the patient, he will, though no express consent was obtained or given, be justified in extending the operation to remove and overcome them.

3. **Same—Action for Damages Against Surgeon—Defensive Evidence.**

Record examined, and held, that the state of the pleadings warranted the introduction of testimony tending to show an emergency; that the exclusion of this testimony constitutes reversible error; that in other respects the cause was tried without substantial error.

Error from District Court, Muskogee County; R. P. deGraffenried, Judge.

Action by Carrie L. Corney against Dr. H. C. King for damages for unauthorized operation and negligent treatment. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

James B. McDonough, for plaintiff in error.

Simpson, Hummer & Foster, for defendant in error.

KANE, J. This was an action for damages for an unauthorized operation and negligence in caring for the patient after the operation had been performed, commenced by the defendant in error, plain-

tiff below, against the plaintiff in error, defendant below. Hereafter, for convenience, the parties will be designated plaintiff and defendant, respectively, as they appeared in the trial court.

The petition of the plaintiff was in the usual form in such cases, and states facts sufficient to constitute a cause of action. The answer was, in effect, a general denial. In a trial before a jury there was a verdict in favor of the plaintiff, upon which judgment was duly rendered, to reverse which this proceeding in error was commenced.

While counsel for defendant present many grounds for reversal, in the view we take of the case it only will be necessary to consider in detail the fourth assignment of error, which counsel state in their brief as follows:

"The court erred in excluding the evidence of Dr. H. C. King and Dr. W. F. Rose, showing the very bad and diseased condition of the ovaries and fallopian tubes of Mrs. Carney."

In their brief, counsel for plaintiff state their theory concisely as follows:

"The propositions pleaded by plaintiff and to substantiate which proof was introduced, are:

"1. That the operation performed by defendant upon plaintiff was unauthorized and unlawful.

"2. That defendant was negligent in caring for plaintiff after the operation had been performed."

The defendant's theory was that the plaintiff authorized him in general terms to perform whatever operation he found necessary to cure certain physical ailments from which she was suffering; and that even if her directions to him were limited, as she states in her testimony which follows, the unforeseen emergency which was for the first time disclosed by proper examination and diagnosis warranted him in performing the operation complained of in order to save the plaintiff's life.

Viewing the evidence tending to support these various contentions from plaintiff's standpoint, it may be briefly summarized as follows:

Plaintiff, who had been married twice, had one child by her first husband. After her second marriage, she bore no children, but had suffered from several miscarriages. Wishing to correct this condition, she called upon the defendant, who is conceded to be a duly qualified and reputable physician and surgeon, practicing his profession at Ft. Smith, in the state of Arkansas. The plaintiff's first interview with Dr. King was held in his office. At this interview the plaintiff told Dr. King of her inability to bear children, and also stated that her family physician told her that her condition was caused by laceration of the uterus. Her directions to Dr. King, as stated by herself in her testimony, were as follows:

"I said, 'Dr. King, I came down here— I have had so many miscarriages—I don't want to go through with any more, and I want to be fixed so I can bear children, and we will never be happy without that.'"

Thereupon, Dr. King made a physical examination of the plaintiff in his office, after whch he said to her, according to the testimony of the plaintiff:

"Well, he told me that I had laceration of the womb, and that I was in a family way at that time, and he said, 'You go out to the hospital—I will fix you up and you can go back home before long and it will be all right.'"

In compliance with Dr. King's advice, the plaintiff went to the hospital. On the following day, Dr. King placed her under an anaesthetic and performed the operation which the plaintiff alleged was unauthorized.

Dr. King in his testimony described the operation performed substantially as follows:

He made an incision in the plaintiff's abdomen and made an examination from which he found that both ovaries were badly affected; that there were many adhesions around the ovaries, intestines, and uterus and that her fallopian tubes were sealed, both ends being full of pus; that a woman whose fallopian tubes are sealed cannot bear children. That upon discovering this condition, he removed the diseased organs and the contiguous infected tissues.

Up to this point, Doctor King and Doctor Rose, who assisted with the operation, were permitted to testify without objection. Upon the witnesses being asked questions tending to prove that the fallopian tubes and ovaries and surrounding tissue were so badly diseased, that it was necessary to remove the diseased organs and affected parts in order to preserve the plaintiff's life and health, and that it would have been dangerous to her life and health not to do so, the objections to the evidence complained of in the assignment of error now under consideration were made and sustained by the court.

As we understand the contention of counsel for the plaintiff and the ruling of the court, this evidence was excluded on the theory that, under the pleadings and the proof, plaintiff's directions to the doctor were so limited that he was only authorized to perform the simple operation of mending the laceration of the uterus, which she was advised by her family physician was the cause of her sterility, which is properly performed through the vaginal opening. We are unable to agree with this narrow construction of plaintiff's language. Her specific directions to the doctor, as stated by herself, were:

"I want to be fixed so I can bear children, and will never be happy without that."

These directions, it seems to us, not only authorized the doctor to cure her condition if possible, but by clear implication authorized the doctor to diagnose her case for the purpose of discovering for himself the exact cause of her sterility and to make whatever exploratory incisions might be necessary to accomplish this purpose. It is quite clear that making the initial incision in plaintiff's abdomen was a proper and necessary step along this line. And the mere fact that the plaintiff may have believed or had been advised by her family physician that her condition was caused by a laceration of the uterus, did not relieve the operating surgeon of the duty of discovering for himself the cause of the physical defect he was called upon to remedy.

When we reach this conclusion, the relevancy of the testimony excluded becomes clearly apparent. The applicable principle which makes this testimony relevant may be summarized from the authorities substantially as follows: If, in the course of an operation to which the patient consented, the physician should discover conditions not anticipated before the operation was commenced, and which, if not removed, would endanger the life or health of the patient, he would, though no express consent was obtained or given, be justified in extending the operation to remove and overcome them.

This principle is recognized by this court in Rolater v. Strain, 39 Okla. 572, 137 Pac. 96, so much relied upon by counsel for plaintiff. The court in adopting this principle cited with approval Mohr v. Williams, 95 Minn. 261, s. c., 104 N. W. Rep. 12 and 1 L. R. A. (N. S.) 439, and 111 Am. St. Rep. 462. In these various annotated reports innumerable cases from other

jurisdictions are collated wherein the same principle is recognized.

There is some contention in argument that, conceding the soundness of this principle, the state of the pleadings does not permit the introduction of this evidence. We think this contention is without merit. The petition, as we have seen, alleges an unauthorized operation. The answer denies that it was unauthorized. Evidence tending to show that on account of conditions discovered by proper diagnosis the operation was necessary to save the life of the patient, tended to show that the operation was authorized under the foregoing principle.

In view of the new trial which must follow, we deem it necessary to add that we have examined the remaining assignments of error and, with the exception of the one now considered and passed upon, the action of the trial court is substantially without error.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded, with directions to grant a new trial.

All the Justices concur.