ETTA D. McGUIRE, APPELLANT, V. RUDOLPH RIX ET AL., APPELLEES.

FILED MAY 3, 1929. No. 26473.

*John A. McKenzie* and *Seymour Smith,* for appellant.

*McGilton & Smith, Kennedy, Holland, DeLacy & Mc-Laughlin* and *Gaines, Van Orsdel & Gaines, contra.*

Heard before ROSE, GOOD, EBERLY and DAY, JJ., and REDICK and SHEPHERD, District Judges.

ROSE, J.

This is an action to recover $100,000 in damages resulting from alleged malpractice by John E. Simpson and Rudolph Rix, physicians and surgeons, defendants, in reducing and treating a comminuted fracture of the astragalus of plaintiff's right ankle and for alleged negligence of the Lord Lister Hospital, defendant, in caring for plaintiff while a patient therein. In the answers of defendants, the actionable negligence pleaded by plaintiff in her petition was denied. At the close of the evidence after a protracted and spirited trial, the district court directed a verdict in favor of defendants. From a judgment of dismissal, plaintiff appealed.

It is clear that actionable negligence of the Lord Lister Hospital, defendant, was not shown and for that reason the dismissal as to it is affirmed. The word "defendants," when hereinafter used to designate parties to the action, will refer to Simpson and Rix.

In the brief for plaintiff and at the bar, her counsel made a formidable argument on the assignment that the district court erred in directing a verdict in favor of defendants for the asserted reason that the evidence was sufficient to sus-

tain a finding against them on the controverted issue that they negligently failed to make proper efforts to reduce the fracture by external manipulation and extension before resorting to a surgical operation which they performed. This and other questions depending for solution upon the evidence required a careful reading and a critical examination of the entire record, consisting as it does of more than 800 pages.

The conditions confronting defendants and what plaintiff might reasonably expect of them under the circumstances in view of her injuries are material inquiries. Between 8 and 9 o'clock in the forenoon, March 27, 1924, plaintiff was thrown from a wagon drawn by a runaway team of horses. In her fall the astragalus or ankle bone of her right foot was split in two and a large portion, perhaps half of it, was forced out of the ankle joint or socket. The dislocated fragment lodged under and distended the outer skin of the foot. She was carried into her house. Simpson was called immediately, responded promptly, examined the injured ankle, administered an anæsthetic and by external manipulation and extension made a futile attempt to force the dislocated fragment of the astragalus back into place. Being unable to reduce the fracture in that manner, he put plaintiff in his automobile and drove rapidly to the Lord Lister Hospital, Omaha, where she received hospital care. To assist him Simpson called Rix, an expert in surgery. Shortly after plaintiff's arrival a hospital expert made X-ray pictures of the injured ankle and afterward explained them and the nature of the injuries to both defendants. The pictures disclosed the dislocated fragment and also several fractures of that part of the crushed astragalus remaining in the socket. Simpson was a learned and skilful physician having a long experience in his profession. Rix was likewise qualified as an expert in surgery. They were confronted with a rare, complicated, serious injury. The exercise of the highest possible degree of professional skill and care in a case like plaintiff's might nevertheless result in a stiff ankle or in the loss of the entire foot. Infection

or blood poisoning might result fatally in spite of professional services performed with the requisite degree of skill and care regardless of the course pursued. In view of the known injuries after an examination of the X-ray pictures, the professional learning of defendants warned them in advance that the fascia or capsule of the ankle joint already contained a slit through which a dislocated fragment with a rough edge had been violently forced as a result of plaintiff's fall—injuries involving other bones of the foot and also of the leg, including the tibia or shinbone which supports the weight of the body. The lacerations caused by the fracture and dislocation gave their own warning of injury to muscles, ligaments and tendons essential to the articulation of the ankle joint. Thus partially outlined, the situation confronting defendants and appreciated by them is conclusively shown by uncontradicted evidence.

After Simpson gave Rix a history of the case and explained the unsuccessful effort in the first instance to replace the dislocated fragment of the astragalus and after both defendants had studied the X-ray pictures with the X-ray expert, the ankle was examined about 5:30 in the afternoon on the day of the accident, while plaintiff was on the operating table under the influence of an anæsthetic. Witnesses called by plaintiff herself testified that Simpson in the presence of Rix worked on the ankle in the operating room of the hospital before any incision had been made. Defendants testified in effect that without success they exhausted the remedy by manipulation and extension and that further efforts by that method would have improperly exposed the injured muscles, ligaments, tendons and other tissues to the danger of additional lacerations and of infection. Defendants testified also that they used their best judgment in proceeding with the surgical operation after they had made requisite efforts without success to reduce the fracture by manipulation and extension. In these respects bad faith or negligence is not shown. It is nevertheless argued by plaintiff that Rix, who had been called as an expert in surgery, did not make any serious effort to

reduce the fracture by manipulation and extension before using the knife, that Simpson made only a feeble effort in that direction, and that therefore the issue was one of fact for the jury. This view of plaintiff is based on testimony of lay witnesses that they were present and did not see Rix manipulate the injured ankle or assist Simpson in doing so and on opinions of expert witnesses to the effect that surgeons should exert themselves to the utmost to reduce the fracture without an operation; that an incision would increase the danger of infection since the outer skin was not broken and that the operation was premature. The argument is inconclusive because the evidence will not sustain a finding that defendants were guilty of actionable negligence in failing to make further efforts by manipulation and extension. Simpson tried that remedy in vain before he took plaintiff to the hospital and renewed his efforts in the presence of Rix in view of what the X-ray pictures disclosed. Evidence of these facts is uncontradicted. How far such efforts' should have been pursued under all the circumstances was a question of professional judgment which defendants exercised. In this respect there is nothing to show that they were prompted by unworthy motives or that they acted in bad faith or that they did not possess and exercise the degree of skill and care ordinarily possessed and exercised by physicians and surgeons in Omaha. A capable physician and surgeon in active practice would naturally hesitate to treat a case like plaintiff's, if he could be held liable in damages for abandoning treatment by external manipulation, after having earnestly tried it until his judgment told him that further efforts of that kind would be hazardous and unavailing, before resorting to a surgical operation that is the only alternative. If such were the law, a person in dire need of professional skill in a distressing emergency might be left without necessary attention. The presumption is that a licensed, skilful physician in active practice performs his duties with the requisite degree of skill and care, in absence of evidence to the contrary.

An expert witness called by plaintiff expressed the opin-

ion that the operation in any event should have been postponed several days and that consequently the surgeon's knife was prematurely used. The overwhelming weight of evidence as shown by standard works on surgery, and by the expert witnesses who testified at the trial below, with one exception, was in favor of the immediate reduction of the fracture by an operation after proper efforts by external manipulation failed. Conceding that delay was sanctioned by an expert and by a standard text-writer, defendants, in the exercise of a wise judgment, were not chargable with actionable negligence for pursuing the better course. The district court did not err in declining to submit the case to the jury on the issue that defendants negligently failed to make proper efforts to reduce the fracture by external manipulation and extension before resorting to a surgical operation.

On behalf of plaintiff there was also a serious argument on the proposition that the trial court erred in declining to submit to the jury the controverted issue that plaintiff did not consent to a surgical operation. In this connection it was insisted that there was testimony by plaintiff tending to show that Rix was introduced to her at the hospital before the anæsthetic was administered; that he did not tell her he would perform an operation; that he told her he would do no more than reduce the fracture and put the foot in a cast; that she could probably go home to-morrow; that Simpson had said he would like to have an X-ray and wanted to reduce the fracture under an anæsthetic; that Simpson told plaintiff she would probably be home to-morrow; that cutting would not be necessary; that Rix, because of his skill in surgery, was called by Simpson. Reference is also made to other testimony of a similar import. Each defendant, however, denied the giving of assurance that an operation would not be performed; but, accepting as true her version of what defendants said to her, it does not follow that she did not consent to a necessary operation. She admitted defendants were called to reduce the fracture. At the time of the conversations defendants had not together

attempted to reduce the fracture by manipulation. If they made the remarks attributed to them, they may then have considered an operation unnecessary, though they had discreetly prepared for one. Their responsibility for an operation accrued when manipulation failed. The law did not require defendants to restore plaintiff to consciousness for the purpose of procuring consent to surgery—the only alternative in the line of professional duty for which they were called. The use of anæsthesia in modern surgery has modified to some extent the ancient rule of the common law requiring consent. Of course the general rule requires consent of the patient, but consent may be implied from circumstances and an operation may be demanded by an emergency without consent. *Delahunt v. Finton*, 244 Mich. 226; *Mohr v. Williams*, 95 Minn. 261, 1 L. R. A. n. s. 439, and cases cited in note; *Luka v. Lowrie*, 171 Mich. 122, 41 L. R. A. n. s. 290, and cases cited in note; *King v. Carney*, 85 Okla. 62, 26 A. L. R. 1032, and cases cited in note. Plaintiff knew that she had a serious injury demanding immediate attention; that her ankle bone was broken; that her foot had been forced out of its natural position; that Simpson alone had been unable to reduce the fracture while she was under the influence of an anæsthetic at her home. She willingly accompanied him to the hospital for the purpose of having the fracture reduced. She knew that X-ray pictures had been taken and that Rix, a specialist in surgery, had been called into the case. Appreciating serious consequences, she told Rix not to cut her foot off. With her husband and two or three neighbors present in the hospital, she consented to an anæsthetic for the purpose of having the fracture reduced. If necessary for that purpose, the circumstances implied consent. The evidence on this issue, when properly considered, will not support any other conclusion and the trial court did not err in so holding.

It was also contended that the case should have been submitted to the jury for the asserted reasons that defendants in performing the operation and in treating the injured ankle were negligent in failing to follow the usual and or-

dinary method of draining the injured ankle and wound; in failing to remove devitalized tissue; in failing to treat promptly necrosis of the ankle bones; in permitting ankylosis of the ankle joint with the foot in a deformed position. On these issues the burden of proof was on plaintiff to prove that defendants did not possess and exercise the degree of skill and care ordinarily possessed and exercised by physicians and surgeons in Omaha and vicinity. To make a case for damages, plaintiff was required to prove actionable negligence that was the proximate cause of an injury of which she complained. A cure or the restoration of the injured ankle to its normal condition was not warranted or implied by the relation of physician and patient. The drainage of which complaint is made consisted of drains extending through the ankle joint after the dislocated fragment of the crushed astragalus had been replaced by means of an incision. The weight of expert testimony shows conclusively that this was a usual and ordinary method practiced in Omaha by physicians and surgeons of the school to which defendants belong. In addition, expert witnesses, with permission of the court properly granted, gave cogent reasons for the system adopted and practiced in view of the lacerations caused by the dislocation. One of the experts called by plaintiff, however, condemned this system of drainage and approved another. Conceding that he testified to a proper method not followed by defendants, the difference in expert opinion did not raise a question of fact for the jury, for the reason that one of two recognized methods may be used without negligence. *Holton v. Burton*, 197 Wis. 405. Actionable negligence in other instances charged is not shown. Plaintiff's injuries and suffering make a strong appeal to sympathy, but the evidence fails to show that they are attributable to actionable negligence of defendants.

AFFIRMED.

Note—As to degree of skill and care required of physician and surgeon, see 37 L. R. A. 835—As to liability for performing surgical operation without consent, see 1 L. R. A.

n. s. 439; 7 L. R. A. n. s. 609; 50 L. R. A. n. s. 880; 21 R. C. L. 381; 3 R. C. L. Supp. 1152; 4 R. C. L. Supp. 1413; 7 R. C. L. Supp. 709.