## HIGLEY v. JEFFREY
(No. 1718; Feb. 23, 1932; 8 Pac. (2d) 96)

For the appellant the cause was submitted without oral argument upon the brief of *D. R. Higley* of Rawlins, Wyoming.

For the respondent there was a brief and oral argument by *John Dillon* of Cheyenne, Wyoming.

BLUME, Justice.

C. W. Jeffrey, the defendant and respondent herein, hereinafter called the defendant, was a physician at Rawlins, Wyoming. D. R. Higley is the administrator of the estate of Kathryn Ruth Higley, deceased, and her surviving husband. He will hereafter be referred to as the plaintiff. The defendant, on May 23, 1928, performed an abdominal operation on the deceased on account of protrusion of the uterus, for the removal of the appendix, and other purposes. During the operation a needle was lost, but could not, upon diligent search, be found. Thereupon the incision made on the abdomen of the deceased was closed by sewing it together, and an X-ray picture was taken, which disclosed the fact that the needle was still in the abdominal region of the deceased. The incision was reopened, the needle quickly removed and the incision resewed. On the second day after the operation the deceased died of pulmonary embolism—a blood clot in the veins shutting off the circulation of the blood. The petition herein sets forth in the first cause of action negligence in the performance of the operation, including the loss of the needle, and in the second claims—so far as it is necessary to state here—that the defendant, by reopening the incision, performed a second operation on the deceased; that such second operation was unauthorized, and that it was the proximate cause of the death of the deceased. The cause was tried to a jury which returned a verdict in favor of the defendant, and from the judgment entered thereon, the plaintiff appeals to this court.

1. There is no contention on this appeal as to the first cause of action. The main errors assigned herein relate to instructions concerning the second cause of action. The facts, in greater detail, are as follows: The operation began a little after nine o'clock in the forenoon, after an anaesthetic had been administered. The main operation lasted about two hours. Toward the latter part of that

time, and while sewing some part of the body of the deceased, the defendant laid a needle, in a needle holder, on the abdomen, and soon thereafter, when picking up the needle holder, noticed that the needle was gone. A diligent search was made, lasting perhaps twenty minutes, but the needle was not found, and the defendant concluded that there was an even chance as to whether it was somewhere in the abdomen or outside of it. The incision was thereupon sewed up, and the defendant prepared to have the deceased taken to another room, to take an X-ray picture, to determine definitely whether the needle was in her body or not. The husband of the deceased, who in the meantime had been watching the operation more or less through a porthole in the door, was not informed of the loss of the needle, or the intention to have an X-ray picture taken, but was told by the defendant that the deceased was all right, and for him to go to lunch, which he did, returning about one o'clock. Defendant testified that the reason why he told the plaintiff to do this was because he did not want to cause him any unnecessary worry. While plaintiff was absent, an X-ray picture disclosed that the needle was in the pelvic cavity of the deceased. She was thereupon taken back to the operating room, some more anaesthetic administered, the incision opened, the needle removed ''with a single motion,'' and the incision resewed. Dr. Stahl, testifying on behalf of the plaintiff, stated that it would have been safe to have left the needle in the body, and that to reopen the incision was a ''serious hazard'' for the deceased. The testimony on behalf of the defendant, on the other hand, shows that it was proper practice to take the needle out; that to have left it in would have endangered the life and health of the patient; that it was proper to sew up the incision before the X-ray picture was taken; that it would have been dangerous to have done otherwise, and that the reopening of the incision had no effect whatever upon the patient's condition and had nothing to do with

her death. The court gave Instruction No. 10 on this subject, reading as follows:

"You are instructed that an assault under the circumstances presented by this case constitutes the unlawful and wrongful performance of an operation upon the person of the deceased without her consent or without the consent of anyone authorized by her to give such consent, and if you believe by a preponderance of the evidence in this case that the acts of the defendant in returning the deceased to the operating room and the reopening of the pelvic cavity of the deceased constituted a second or different operation from that operation to which she had consented, and that such acts of so returning her to the operating room, reopening the pelvic cavity, recovering the needle, and reclosing the incision, were the proximate cause or the proximate concurring cause of her subsequent death, and that such acts herein described were not done and performed by defendant as a part of his duties necessarily engaged to be performed in the best interests of the patient, then you should find for the plaintiff upon the second cause of action."

Plaintiff contends, as stated, that to reopen the incision was a second operation; that defendant had no authority to perform it, unless, perhaps, in an emergency which threatened the life of the deceased, and that no such emergency existed in this case. Objection is made to the last part of Instruction No. 10 as assuming that, under the circumstances there stated, the defendant had a right to reopen the incision. It is undoubtedly the rule that ordinarily, and in the absence of an emergency, a surgical operation cannot be performed upon a person without his consent or the consent of someone authorized to speak on his or her behalf. 48 C. J. 1130, 1131. The leading case on the subject is Mohr v. Williams, 95 Minn. 261, 104 N. W. 12; 111 A. S. R. 462, 1 L. R. A. (N. S.) 439, 5 Ann. Cas. 303, criticized, and the rule thereof applied with modification, in Bennan v. Parsonett, 83 N. J. L. 20, 83 Atl. 948. And it has been held that authority to perform one opera-

tion does not confer authority to perform a second. Pratt v. Davis, 224 Ill. 300, 79 N. E. 562, 7 L. R. A. (N. S.) 609, 8 Ann. Cas. 197. But the question here goes farther than that. Here consent to an operation was given, both by the deceased and her husband, and the point to be determined is how far the defendant was permitted to go pursuant to that consent—whether, in other words, there was what in law would be considered a separate and second operation, or whether what defendant did was incidental to the main operation. Some of the cases have discussed the incidental power of a physician and surgeon, and indicate that it should not be construed too narrowly or illiberally.

In the Mohr case, supra, the court said:

"Reasonable latitude must, however, be allowed the physician in a particular case; and we would not lay down any rule which would unreasonably interfere with the exercise of his discretion, or prevent him from taking such measures as his judgment dictated for the welfare of the patient in a case of emergency. * * * And again, if in the course of an operation to which the patient consented, the physician should discover conditions not anticipated before the operation was commenced, and which, if not removed, would endanger the life or health of the patient, he would, though no express consent was obtained or given, be justified in extending the operation to remove and overcome them."

The rule stated in the latter part of this instruction is also stated in 48 C. J. 1131, and King v. Carney, 85 Okl. 62, 204 Pac. 270, 26 A. L. R. 1032.

In the case of Harrison v. Reed, 21 Ohio N. P. N. S. 206, a female patient, after describing her symptoms to a surgeon, voluntarily submitted to an operation, which was expected to require a single incision. The surgeon, in the course of the operation, found that it was necessary to make, and he made, an additional incision for the purpose of reaching the cause of the symptoms described by her. It was held that authority to make such second incision would be implied in law. The court said in part:

"The law implies her consent to all things necessary to be done under all the circumstances and conditions of plaintiff when the first incision was made, having in mind the symptoms of plaintiff, and to the performance of such operation as was reasonably necessary to save and protect plaintiff from continued serious illness. If having her consent to make the lower incision, and to perform the lower operation with the understanding that this was all that was to be done, and that no other incision or operation was required, nevertheless, if the defendant found on opening plaintiff's abdomen by the lower incision that another incision was necessary to reach and alleviate the ailments and disorders of the colon elsewhere, as evidenced by the symptoms and conditions of her abdomen as shown at that time and the defendant, having therefore made this upper incision and located the seat of and remedied the ailment and disorders as indicated by these other symptoms, the consent of this plaintiff to the making of such other upper incision and to the performance of such other upper operation will be implied in law."

The case of McClallen v. Adams, 19 Pick. (36 Mass.) 333, 31 Am. Dec. 140, was a suit by a surgeon for his fees, which was resisted on the ground that an operation performed by plaintiff on the wife of defendant was unauthorized. There was no specific authority for such operation, but the wife, afflicted with scrofulous humor, was placed in the care of the plaintiff as a surgeon. The opinion states:

"The Court are of opinion, upon the facts appearing by the bill of exceptions, that the defendant, by placing his wife under the care of the plaintiff, whom he knew, at a distance from his own residence, for medical and surgical treatment, for a dangerous disease, impliedly requested him to do all such acts, and adopt such course of treatment and operations, as in his judgment would be most likely to effect her ultimate cure and recovery, with the assent of the wife, and therefore that the operation in question was within the scope of the authority given him. They are also of opinion, that the assent of the wife, to the operation, was to be presumed from the circumstances. Although it might have been an act of prudence in the plaintiff to give the defend-

ant notice of the situation of the wife, and of his intention to perform a dangerous operation, yet we think he might safely trust to the judgment of the wife, to give her husband notice from time to time of her situation and intentions, and that it was not necessary, in point of law, for the plaintiff to give such notice, or have any new request, in order to enable him to recover a reasonable compensation for his services. If the defendant intended to show, that the operation was unnecessary or improper, under the circumstances, or that it was unskillfully or carelessly performed, the burden of proof was on him. The performance of this operation being within the scope of the plaintiff's authority, if in his judgment necessary or expedient, and that it was so, is to be presumed from the fact, it was not necessary for him to prove to the satisfaction of the jury, that it was necessary and proper, under the circumstances, or that before he performed it he gave notice to the defendant, or that it would be dangerous to the wife to wait before he performed it, till notice could be given to the defendant.''

In the case of Pratt v. Davis, supra, the Supreme Court of Illinois said in the course of the opinion:

''Where the patient desires or consents that an operation be performed and unexpected conditions develop or are discovered in the course of the operation, it is the duty of the surgeon, in dealing with these conditions, to act on his own discretion, making the highest use of his skill and ability to meet the exigencies which confront him, and in the nature of things he must frequently do this without consultation or conference with any one, except, perhaps, other members of his profession who are assisting him. Emergencies arise, and when a surgeon is called it is sometimes found that some action must be taken immediately for the preservation of the life or health of the patient, where it is impracticable to obtain the consent of the ailing or injured one or of anyone authorized to speak for him. In such event the surgeon may lawfully, and it is his duty to, perform such operation as good surgery demands, without such consent.''

These cases indicate that unexpected things arising in the course of an operation, and incidental thereto, must,

generally at least, be met according to the best judgment and skill of the surgeon. In the case at bar a needle was lost during the operation and after a search of 20 minutes it could not be determined whether it was still in the abdomen of the deceased or not, and all that was done thereafter, including the first sewing of the incision, taking the X-ray picture and re-opening of the incision was really a continuance of the search for the needle, which was commenced during the main operation, and it is hard to see, accordingly, how the re-opening of the incision could be said to be a second operation. When it was discovered that the needle might still be in the body of the deceased, she was entitled to that treatment at the hands of the defendant which was in accordance with due care, diligence and skill. She herself was unconscious and could not herself determine what should be done. Plaintiff does not claim that he would have refused his consent to what was done by defendant, after the discovery above stated, and it may at least be questioned, whether, had he refused his consent, it would, nevertheless, not have been the defendant's duty to do that which, in the exercise of ordinary prudence, care and skill should have been done under the circumstances. See State v. Housekeeper, 70 Md. 162, 16 Atl. 382, 2 L. R. A. 587, 14 Am. St. Rep. 340. There can be no doubt, as correctly told the jury in instruction No. 6, and as admitted by the plaintiff, that a surgeon should, in the performance of an operation, remove from the body of the patient all foreign bodies, that may have been introduced therein, unless, perchance, these are necessarily to be left therein for a proper and intended purpose. 48 C. J. 1131-32. Thus surgeons have been held liable for leaving a needle in the body. Matteson v. Thiel, (Wash.) 298 Pac. 333; Sellers v. Noah, 209 Ala. 103, 95 So. 167. Removal of such substances has been held to be a part of the operation. Thus it was said in Palmer v. Humiston, 87 Ohio St. 401, 101 N. E. 283, 284, 45 L. R. A. N. S. 640, that

"the use of the sponge becomes a part of the operation as much as the use of a knife or needle would become a part of this operation, and if the use of the sponge be a part of the operation, it must follow as a corollary that the removal of the sponge at the end of its use becomes also a part of the operation."

To the same effect are Akridge v. Noble, 114 Ga. 949, 41 S. E. 78; Gillette v. Tucker, 67 O. S. 106, 65 N. E. 865, 93 Am. St. Rep. 639; Funk v. Bonham, (Ind. App.) 151 N. E. 22; Ault v. Hall, 119 O. S. 422, 164 N. E. 518, 60 A. L. R. 128.

In Barnett v. Brand, 165 Ky. 616, 177 S. W. 461, a surgeon was sued for malpractice. A pad was left in the body of the deceased. The operation at which this was done was performed on Friday. The Sunday following, the surgeon was advised that one of the pads, used in the operation, was missing. He took it out the following Tuesday. The surgeon defended on the ground that, according to custom, he depended on the attending nurse to look after the pads, and the jury were instructed to the effect that if that was the custom, and that defendant was assured by the nurse that all the pads had been accounted for, the surgeon should not be held to have been negligent in that connection. The appellate court held the instruction erroneous, saying in part:

"The removal of the sponges and pads is a part of the operation, and an operation cannot be said to be concluded until such removal takes place."

And the plaintiff in the same case contended that the surgeon had been negligent in not removing the pad sooner. An instruction to the jury ignored that contention. That instruction, too, was held to be erroneous, the court saying in part:

"On being apprised that one of the pads was missing, it was the duty of the defendant to open the incision, ex-

plore for the pad and promptly remove it, provided that this could be done without endangering the life of the defendant.''

We think, accordingly, that it cannot be said in the case at bar that the reopening of the incision for the removal of the needle was a separate and independent operation. It was incidental to and a part of the main one. Of course, it may be for the best interests of a patient at times to leave a foreign substance in the body temporarily, if the immediate removal thereof would be dangerous to the health or life of the patient. As to what should be done in a particular case must depend on the facts. What would be the exercise of due care and skill in one case might be negligence in another. In the case at bar the evidence was conflicting, and the jury resolved the question against the plaintiff. From what we have said it follows that instruction No. 6 and that portion of instruction No. 10 complained of cannot be said to have been erroneous, or at least not prejudicial.

2. Other errors are assigned herein. We have considered them carefully and do not find them well taken. We may refer to them briefly. Plaintiff asked an instruction on proximate cause, which was refused, and another given in place thereof, which seems to be without error. Instruction No. 8 contains the statement that ''the gist of the action is negligence,'' and plaintiff claims that this statement ignored his second cause of action. But according to an instruction also given, all instructions were to be considered together and not singly, and instruction No. 10 presented plaintiff's claim on his second cause of action. In any event, the statement above quoted was not incorrect in view of what we have heretofore said. Plaintiff also assigns as error that he was not permitted to reopen his case in chief after the close of the case by the defendant. A motion to reopen a case for the purpose of introducing further testimony is addressed to the sound discretion of the court,

which is not subject to review, unless there has been an abuse thereof. Hecht v. Acme Coal Co., 113 Pac. 788, 117 Pac. 132, 34 L. R. A. (N. S.) 773, 777, Ann. Cas. 1913 E 258, 19 Wyo. 18, 38 Cyc. 1360. At the time that the motion herein was made, some of the defendant's witnesses had been excused by the court and counsel. It might have been necessary to have recalled them, if plaintiff's motion had been granted. Under these circumstances, no abuse of discretion appears.

Finding no reversible error in the record, the judgment herein is affirmed.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.