REPRODUCTIVE HEALTH SER-
VICES OF PLANNED PARENT-
HOOD OF The ST. LOUIS REGION,
INC., et al., Appellants,

v.

Jeremiah W. NIXON, et
al., Respondents.

No. SC 86768.

Supreme Court of Missouri,
En Banc.

Feb. 28, 2006.

Mimi Liu, Roger K. Evans, New York, NY, Arthur A. Benson, II, Jamie K. Lansford, Kansas City, MO, for Appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Victorine R. Mahon, Asst. Atty. Gen., Jefferson City, R. Scott Ingram, Office of St. Louis Circuit Atty., St. Louis, John L. Patton, Boone County Counselor, Columbia, MO, for Respondents.

PER CURIAM.

## I. Introduction

Section 188.039, RSMo Supp.2003, creates an informed consent requirement including a 24–hour waiting period before elective abortions may be performed in Missouri. Planned Parenthood argues that the act is unconstitutional for vagueness. Planned Parenthood also argues that the 24–hour waiting provision violates rights of liberty and privacy under the Missouri Constitution. All of Planned Parenthood's federal claims have been reserved for adjudication in federal court. This case only concerns Planned Parenthood's facial claims under the Missouri Constitution.

Planned Parenthood filed this action in the Circuit Court of Boone County against the Missouri Attorney General's Office, the Office of the Circuit Attorney for the City of St. Louis, and the Boone County Counselor. The trial court granted summary judgment finding that there was no constitutional violation. The trial court's order stated, in relevant part: "The terms of section 188.039, RSMo Cum.Supp.2003, are not impermissibly vague; … A knowing violation of section 188.039 RSMo is required to subject an individual to criminal prosecution and/or license revocation pursuant to sections 188.075 and 188.065 RSMo; [and] … [t]he twenty-four hour waiting period to obtain an abortion does not violate the Missouri or United States Constitution."

This Court has exclusive appellate jurisdiction over this case. Mo. Const. art. V, sec. 3. The judgment of the circuit court is affirmed.

## II. The Statute

Section 188.039 states:

1. For purposes of this section, "medical emergency" means a condition which, on the basis of the physician's good faith clinical judgment, so complicates the medical condition of a pregnant woman as to necessitate the immediate abortion of her pregnancy to avert her death or for which a delay will create a serious risk of substantial and irreversible impairment of a major bodily function.

2. Except in the case of medical emergency, no person shall perform or induce an abortion unless at least twenty-four hours prior thereto a treating physician has conferred with the patient and discussed with her the indicators and contraindicators, and risk factors including any physical, psychological, or situational factors for the proposed procedure and the use of medications, including but not limited to mifepristone, in light of her medical history and medical condition. For an abortion performed or an abortion induced by a drug or drugs, such conference shall take place at least twenty-four hours prior to the writing or communication of the first prescription for such drug or drugs in connection with inducing an abortion. Only one such conference shall be required for each abortion.

3. The patient shall be evaluated by a treating physician during the conference for indicators and contraindicators, risk factors including any physical, psychological, or situational factors which

would predispose the patient to or increase the risk of experiencing one or more adverse physical, emotional, or other health reactions to the proposed procedure or drug or drugs in either the short or long term as compared with women who do not possess such risk factors.

4. At the end of the conference, and if the woman chooses to proceed with the abortion, a treating physician shall sign and shall cause the patient to sign a written statement that the woman gave her informed consent freely and without coercion after the physician had discussed with her the indicators and contraindicators, and risk factors, including any physical, psychological, or situational factors. All such executed statements shall be maintained as part of the patient's medical file, subject to the confidentiality laws and rules of this state.[1]

5. The director of the department of health and senior services shall disseminate a model form that physicians may use as the written statement required by this section, but any lack or unavailability of such a model form shall not affect the duties of the physician set forth in subsections 2 to 4 of this section.

The criminal penalty for violation of section 188.039 is contained in section 188.075, RSMo 2000. That section provides: "Any person who ... *knowingly* performs or aids in the performance of any abortion or *knowingly* fails to perform any action required by sections 188.010 to 188.085 shall be guilty of a class A misdemeanor...." Section 188.065, RSMo 2000, provides an additional civil penalty. It provides, in relevant part: "Any practitioner ... or other health personnel who shall *willfully and knowingly* do or assist any action made unlawful by sections 188.010 to

188.085 shall be subject to having his license, application for license, or authority to practice ... in the state of Missouri rejected or revoked...." Sec. 188.065 (emphasis added).

## III. Legal Standard

◼ "Statutes are presumed to be constitutional. Accordingly, the burden to prove a statute unconstitutional rests upon the party bringing the challenge. This Court will not invalidate a statute unless it clearly and undoubtedly contravenes the constitution and plainly and palpably affronts fundamental law embodied in the constitution." *Suffian v. Usher*, 19 S.W.3d 130, 134 (Mo. banc 2000) (citations omitted). This Court will "resolve all doubt in favor of the act's validity" and may "make every reasonable intendment to sustain the constitutionality of the statute." *Westin Crown Plaza Hotel v. King*, 664 S.W.2d 2, 5 (Mo. banc 1984). "We do not ... address the constitutionality of statutes in isolation. Instead, we construe the whole statute and we do so in light of a strong presumption of a statute's validity." *State v. Shaw*, 847 S.W.2d 768, 776 (Mo. banc 1993) (citations omitted). If a statutory provision can be interpreted in two ways, one constitutional and the other not constitutional, the constitutional construction shall be adopted. *See Asbury v. Lombardi*, 846 S.W.2d 196, 199 (Mo. banc 1993).

## IV. Vagueness

◼ Planned Parenthood argues that section 188.039 is unconstitutionally vague. Planned Parenthood focuses particularly upon the requirement that, 24 hours prior to any abortion, the physician must discuss, and document, with the patient "the indicators and contraindicators, and risk

---

1. The state acknowledges that the statements maintained as part of the patient's medical

file are subject to the physician/patient privilege.

factors including any physical, psychological, or situational factors for the proposed procedure...." Planned Parenthood complains that because the terms "indicators," "contraindicators," "risk factors," and "situational factors" are undefined, a physician cannot know what is required to avoid criminal liability.

### A.

"A statute is unconstitutionally vague if it does not give a person of ordinary intelligence sufficient warning as to the prohibited behavior. The vagueness doctrine is designed to help protect against arbitrary and discriminatory application of laws." *State v. Self*, 155 S.W.3d 756, 760 (Mo. banc 2005) (citations omitted). "The test for vagueness is whether the language conveys to a person of ordinary intelligence a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *State v. Brown*, 140 S.W.3d 51, 54 (Mo. banc 2004) (citations omitted). "The constitution does not ... require the legislature to adhere to impossible standards of specificity." *State v. Shaw*, 847 S.W.2d 768, 774–75 (Mo. banc 1993) (citations omitted). "If the terms or words used in the statute are of common usage and are understandable by persons of ordinary intelligence, they satisfy the constitutional requirements as to definiteness and certainty." *State v. Beine*, 162 S.W.3d 483, 491 (Mo. banc 2005).

### B.

Subsection 5 of the statute is drafted to provide the physician a safe harbor and guidance regarding what must be discussed and documented with the patient at the conference 24 hours prior to the contemplated abortion. The subsection requires the department of health and senior services to disseminate a model form that the physician "may use."

Subsection 5 is of significance in two respects. First, the physician is not required to use the model form. Second, the physician is required to comply with the statute regardless of whether the department of health and senior services disseminates the form. In this way, the statute recognizes the need of the physician to exercise his or her professional judgment regarding the "indicators and contraindicators, and risk factors" particular to the patient's medical history and medical condition regardless of any model form.

Although the model form may insulate the physician from criminal liability under the statute, the physician still must fulfill his or her professional duties to the patient to obtain her informed consent prior to the initiation of any medical procedure. This is a duty that has been recognized under the law for almost 100 years. *See Pratt v. Davis*, 224 Ill. 300, 79 N.E. 562 (1906). Relying on the *Pratt* case, Mr. Justice Cardozo, writing for the New York Court of Appeals, first described the rule as follows:

> Every human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon who performs an operation without his patient's consent commits an assault, for which he is liable in damages. This is true except in cases of emergency where the patient is unconscious and where it is necessary to operate before consent can be obtained.

*Schloendorff v. Society of New York Hospital*, 211 N.Y. 125, 105 N.E. 92, 93 (1914). The doctrine developed as a corollary of the law of battery, wherein a touching of the patient's body without consent constitutes a battery, even if the intended contact is to benefit rather than harm the patient. 1 Steven E. Pegalis, American

Law of Medical Malpractice § 4.1 (3d ed.2005).

The modern trend in informed consent cases is to treat a failure to disclose collateral risks of a medical or surgical procedure as a negligent breach of the physician's duty to his patient. *Id.* Missouri was one of the first jurisdictions to recognize a duty to obtain informed consent under a negligence theory. *Mitchell v. Robinson,* 334 S.W.2d 11, 19 (Mo.1960). In *Mitchell,* this Court held that "doctors owed their patient in possession of his faculties the duty to inform him generally of the possible serious collateral hazards...." *Id.* The negligence theory of informed consent has found growing acceptance in many jurisdictions and may properly be characterized as the modern view. Pegalis, § 4.1, at 292.

 Section 188.039 imposes no duty regarding the extent of consultation between a physician and a patient seeking an abortion additional to that already required by common law, a duty that has been recognized under the law for almost 100 years and has been firmly established in Missouri for 45 years.

### C.

 Missouri law generally requires a mental state as an element to any crime.

A culpable mental state will be imputed to each statutory element, unless its imputation would be inconsistent with the purpose of the statute or 'lead to an absurd or unjust result.' Sec. 562.026.2. Legislative intent not to require a culpable mental state for each element of the crime must be clearly apparent before a particular statute will be construed not to require proof of such culpability.

*State v. Self,* 155 S.W.3d 756, 762 (Mo. banc 2005). Section 188.075 makes criminal a violation of the requirements of 188.039 only if the health care provider *"knowingly"* fails to comply. Section 188.065 provides that a health care provider's license may be subject to discipline only if he or she *"willfully and knowingly"* violates section 188.039.

At oral argument, the parties agreed that the "knowing" mental requirement of sections 188.039 and 188.065 should be read in conjunction with the requirements of section 188.039 so that the physician is obligated to discuss with the patient only those "indicators and contraindicators, and risk factors" known to the physician in the exercise of his or her best medical judgement. Counsel for Planned Parenthood stated that "the only way to render the act less broad is for the court to read in limitations allowing physicians to exercise their best medical judgment or their good faith medical judgment...." Counsel for the attorney general was asked: "In your reading, does the scienter then incorporate best medical judgment?," She responded: "I think it is absolutely implicit." She later stated: "The scienter requirement of 'knowingly' applies to each element of the statute.... They have to know that this is a risk factor that would affect this woman, and if they, and if the doctor doesn't believe it's relevant in this case, to this particular woman, to this particular woman's medical condition, then they don't have to counsel on that." The counsel for the circuit attorney stated: "The doctor has to know that this is a risk factor and the doctor has to know that it was not discussed...."

### D.

 The statute is not vague because, aside from the 24–hour waiting requirement, subsections 2, 3, and 4 of section 188.039 place no further duty upon Missouri physicians than was already imposed at common law. This statute merely codi-

fies the physician's duty to obtain informed consent from a patient prior to an abortion and creates criminal or disciplinary liability if the physician knowingly fails to fulfill that duty. In particular, a physician's duty to warn of "psychological" or "situational" risk factors cannot extend beyond the physician's actual expertise. For purposes of criminal or license liability under this statute, a physician has a duty to warn about only those factors that he or she knows may affect the patient's medical condition.

■■■■ There is no meaningful difference between the clinical and medical judgment language utilized in section 188.039 and the traditional duty of a physician "to use that degree of skill and learning ordinarily used under the same or similar circumstances by the members of defendant's profession." M.A.I. 11.06 (1990). The scienter requirement does differ, however. That is, if the physician negligently fails to obtain informed consent he or she may be civilly liable for negligence. By contrast, no criminal or disciplinary action can result unless the physician knowingly dispenses with good faith clinical judgment when consulting and obtaining a patient's informed consent to an abortion or unless the physician knowingly performs an abortion in contravention of the requirements of section 188.039. The statute's "knowingly" requirement allows for criminal liability or license discipline only for risks the individual physician knew he or she should have discussed with the patient, but did not. The statute is not void for vagueness. Specifically, if a physician provides the disclosure required by the statute in accordance with the physician's "good faith clinical judgment" and documents the disclosure in accordance with subsections 4 and 5 of section 188.039, it may well preclude prosecution of the physician on the theory that the disclosure was not sufficient.

## V. Constitutionality of 24–hour waiting period

■■■■ Planned Parenthood also argues that the 24–hour waiting provision violates the Missouri Constitution. The Supreme Court of the United States held in *Planned Parenthood v. Casey*, that a 24–hour waiting period does not violate the federal constitution. 505 U.S. 833, 887, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). That opinion stated:

> [W]e are not convinced that the 24–hour waiting period constitutes an undue burden.... [T]he right protected by *Roe* is a right to decide to terminate a pregnancy free of undue interference by the State. Because the informed consent requirement facilitates the wise exercise of that right, it cannot be classified as an interference with the right *Roe* protects. The informed consent requirement is not an undue burden on that right.

Despite *Casey*, Planned Parenthood argues that the Missouri constitution should be construed more broadly than the United States constitution.

The federal due process clause states, in part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, sec. 1. The Missouri constitution contains two related clauses. Missouri's due process clause states: "That no person shall be deprived of life, liberty or property without due process of law." Mo. Const. art. I, sec. 10.

Article I, section 2 of the Missouri constitution also states:

> That all constitutional government is intended to promote the general welfare of the people; that all persons have a natural right to life, liberty, the pursuit of happiness and the enjoyment of the

gains of their own industry; that all persons are created equal and are entitled to equal rights and opportunity under the law; that to give security to these things is the principal office of government, and that when government does not confer this security, it fails in its chief design.

There is no reason, within the context of this case, to construe this language from the Missouri constitution more broadly than the language used in the United States constitution. *See State v. Walsh,* 713 S.W.2d 508, 513 (Mo. banc 1986); *see generally State ex rel. Danforth v. Cason,* 507 S.W.2d 405, 408–09 (Mo. banc 1973).

## VI. Conclusion

The judgment of the trial court is affirmed.

All concur.