Mary DOE, Appellant,

v.

**Eric GREITENS, et al., Respondents.**

**WD 80387**

Missouri Court of Appeals, Western District.

OPINION FILED: October 3, 2017

Dean Sauer, Jefferson City, MO, Counsel for Respondents.

· Jason Dunkel, St. Louis, MO, Co-Counsel for Respondents.

Before Division Three: Alok Ahuja, P.J., Thomas H. Newton, and Cynthia L. Martin, JJ.

Thomas H. Newton, Judge

Ms. Mary Doe appeals the Cole County Circuit Court judgment dismissing with prejudice her second amended petition against the governor, attorney general, members of the Missouri Board of Registration for the Healing Arts (Government Respondents), and two John Does, seeking to enjoin the enforcement of parts of Missouri's Informed Consent Law, § 188.027, as a violation of her rights under the state's Religious Freedom Restoration Act (RFRA), § 1.302,[1] as well as the Establishment and Free Exercise Clauses. She also sought to invalidate certain parts of sec-

---

1. Section 188.027 became effective October 10, 2014, and the Religious Freedom Restoration Act (RFRA) took effect August 28, 2003. To our knowledge, no Missouri state appellate court has interpreted or applied RFRA, which prohibits a government authority from restricting a person's free exercise of religion without a compelling interest. § 1.302.1.

tion 188.027 under the Establishment and Free Exercise Clauses. Ms. Doe challenges on appeal the circuit court's ruling as to her RFRA claims and her Establishment Clause claim.

Because we believe that this case raises real and substantial constitutional claims, it is within the Missouri Supreme Court's exclusive jurisdiction under Article V, section 3 of the Missouri Constitution, and we hereby order its transfer. *See Boeving v. Kander*, 496 S.W.3d 498, 503 (Mo. banc 2016) ("where any party properly raises and preserves in the trial court a real and substantial (as opposed to merely colorable) claim that a statute is unconstitutional, this Court has exclusive appellate jurisdiction over any appeal in which that claim may need to be resolved.").[2]

## Factual and Procedural Background

■ Ms. Doe's petition was dismissed for failure to state a claim, thus on appeal "[t]he facts alleged in the petition are assumed to be true, and all reasonable infer-

**2.** Ms. Doe has suggested that we may decide her RFRA claim and then, based on our holding, either return the case to the circuit court for further proceedings or transfer the case to the Missouri Supreme Court to determine her constitutional challenges. The Missouri Supreme Court has determined, however, that in cases involving a real and substantial constitutional issue, it has exclusive appellate jurisdiction regardless of the presence of other issues over which this Court has jurisdiction, and, in fact, may decide the case on the basis of those other issues. *See State ex rel. State Hwy. Comm'n v. Wiggins*, 454 S.W.2d 899, 902 (Mo. banc 1970) ("Exclusive appellate jurisdiction of a case cannot depend upon how certain issues of that case are decided, with appellate jurisdiction in this court if decided one way but jurisdiction in the court of appeals if decided the other way.").

**3.** The Religion Clauses encompass the Establishment and Free Exercise Clauses of the First Amendment of the U.S. Constitution and have been applied to the states under the Fourteenth Amendment. *Murdock v. Pa.*, 319

ences are liberally construed in favor of the plaintiff." *Smith v. Humane Soc'y of the U.S.*, 519 S.W.3d 789, 798 (Mo. banc 2017); *see also Avery Contracting, LLC v. Niehaus*, 492 S.W.3d 159, 162 (Mo. banc 2016). If the case were to proceed beyond the pleading stage, Ms. Doe would have the burden of proving her allegations with competent evidence.

■ Ms. Doe has raised Religion Clause-based claims to Missouri's Informed Consent Law, specifically challenging the validity of certain parts of the statute with which she was required to comply when she underwent an abortion in Missouri in May 2015.[3] The law required that she certify receipt in person of printed materials (Booklet) containing specified information including a prominently displayed statement that "[t]he life of each human being begins at conception. Abortion will terminate the life of a separate, unique, living human being." § 188.027.1(2). The law also required that

U.S. 105, 108, 63 S.Ct. 870, 87 L.Ed. 1292 (1943) (recognizing application of Establishment and Free Exercise Clauses to the states); Under the Establishment Clause, which "was intended to afford protection" against "sponsorship, financial support, and active involvement of the sovereign in religious activity," a statute is analyzed to determine whether it has a secular legislative purpose, its principal or primary effect advances or inhibits religion, and the statute fosters an excessive government entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612-13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (citations omitted). Alternatively, under the Free Exercise Clause, the right to believe and profess whatever religious doctrine one desires is absolutely protected, while the performance of or abstention from physical acts motivated by religious belief is protected from regulation under facially neutral laws with certain limitations, primarily where that conduct poses "some substantial threat to public safety, peace or order." *Mansfield v. Horner*, 443 S.W.3d 627, 647 (Mo. App. W.D. 2014).

she be given the opportunity to view an active ultrasound (Ultrasound) and to hear the fetal heartbeat (Audible Heartbeat Offer), then wait seventy-two hours (Waiting Period) before the procedure could be performed. § 188.027.1 and .3. Ms. Doe alleges that these abortion preconditions promote the religion-based "Missouri Tenet," i.e., that "[t]he life of each human being begins at conception. Abortion will terminate the life of a separate, unique, living human being." She further claims that these preconditions "cause doubt, guilt and shame in a pregnant woman who does not believe the Missouri Tenet" to achieve their purpose, which "is to discourage a pregnant woman from getting an abortion."

To prepare for her medical procedure, Ms. Doe worked approximately forty-five hours to earn the money to pay for the Ultrasound, which her abortion provider required under the law, the Audible Heartbeat Offer, and lodging for the Waiting Period. She alleged that the Informed Consent Law caused her to devote some forty-five hours of her life "to finance the promotion of the Missouri Tenet to herself, a religious doctrine she does not believe," and required her to engage in conduct that burdened her free exercise of "Plaintiff's Tenets."[4] Ms. Doe traveled by bus to St. Louis in May 2015 and presented a letter to her abortion provider requesting an immediate abortion and indicating that she had already reviewed the Booklet; she did not believe as a matter of religious faith

that human life begins at conception; at her stage of pregnancy, the fetus was not capable of survival outside her body; she did not believe that an abortion terminates "the life of a separate, unique, living human being"; and she absolved the provider of any responsibility for providing her with the Booklet and forcing her to wait seventy-two hours before performing the abortion. The abortion provider refused her request and complied with the Informed Consent Law's preconditions. Ms. Doe read the Booklet and acknowledged its receipt, she had the Ultrasound and declined the Audible Heartbeat Offer and "felt guilt and shame for doing so." Ms. Doe stayed in a St. Louis motel, returned to the abortion provider seventy-two hours later, and had the medical procedure. She alleges that these actions burdened or restricted her free exercise of Plaintiff's Tenets in various ways, among them having to pay for "the delivery [to] herself of the religious belief of the State of Missouri that the Missouri Tenet is true."

In essence, Ms. Doe has alleged that the Informed Consent Law restricted her free exercise of religion and constitutes the state's establishment of religion. The law, allegedly based on a religious tenet, required that she act and spend time and money, before undergoing a medical procedure in this state, contrary to actions— substantially motivated by her sincerely held religious beliefs—that she would have taken or refused to undertake. She also

---

4. According to her alleged "deeply held religious beliefs," Ms. Doe's "body is inviolable and subject to her will alone"; she must make health-related decisions "based on the best scientific understanding of the world, even if the science does not comport with the religious or political beliefs of others"; fetal tissue "is part of her body and not a separate, unique, living human being"; she has the sole authority to decide "whether, when and how to proceed with" the termination of her preg-

nancy; "[s]he may, in good conscience, have an abortion without regard to the current or future condition of her Fetal Tissue"; and she must not support "religious, philosophical or political beliefs" that (1) "imbue her Fetal Tissue with an existence separate, apart or unique from her body," (2) "cede control to a third party over the Removal Procedure," and (3) promote "the idea [that] Fetal Tissue is a human being or imbued with an identity separate, apart and unique from her body."

alleged that the state has no compelling interest in applying these restrictions to her because she had already made an informed and voluntary decision to undergo an· abortion before entering the abortion provider's facility. By its terms, the Informed Consent Law's purpose is to· ensure that a woman's decision to have an abortion is voluntary and fully informed. § .188.027.1.

Counts I-III of Ms. Doe's petition allege that the Informed Consent Law's preconditions violate RFRA. With respect to herself and women who share her religious tenets, Ms. Doe requests declarations under RFRA that sections 188.027.1(2), ·.3, and · .12 violate sections 1.302 or 188.027(11)[5] and are null and void, an injunction to stop the Government Respondents from enforcing these sections, and a declaration that abortion providers need not comply with these sections.

Counts IV and V allege that the Booklet, Ultrasound Offer, and Waiting Period violate the Establishment and Free Exercise Clauses and that the Government Respondents have infringed these rights under color of state law in violation of 42 U.S.C. § 1983. Ms. Doe claims that "the State of Missouri is using its power to regulate abortion to promote some, but not all, religious beliefs that Fetal Tissue is, from conception, a separate and unique human being whose destruction is morally wrong."

Thus, the Informed Consent Law, in her view, fosters "an excessive entanglement between the State of Missouri and adherents to the religious belief that Fetal Tissue is a separate and unique human being from conception whose destruction is morally wrong." She requests an order declaring null and void the Missouri Tenet and sections 188.027.1(2), (4), and (5); 188.027.3; and 188.027.12. She also seeks a declaration that any woman may obtain an abortion and any medical provider may provide an abortion in Missouri without complying with sections 188.027.1(2), (4), and· (5); 188.027.3; and 188.027.12. She further requests ·injunctive relief to preclude the state from enforcing these sections.

Ms. Doe also alleges that the Government Respondents "have infringed on Plaintiff's rights under the Free Exercise Clause." Ms. Doe requests the same relief for· this alleged violation as for the purported Establishment Clause violation. The circuit court dismissed her second amended petition with prejudice, granting the Government Respondents' motion to dismiss for failure to state a claim.[6] Ms. Doe filed this appeal.

## Legal Analysis

◼ Ms. Doe raises two points, asserting circuit court error in dismissing her RFRA claims and her Establishment Clause claim.[7] Because we find on prelimi-

---

**5.** We assume that this is a reference to section 188.027.11. According to Ms. Doe, the Ultrasound and Audible Heartbeat Offer, as well as the compelled delivery of the Booklet and the seventy-two-hour waiting period violated her right to make her abortion decision freely, voluntarily, and without coercion as required under this provision.

**6.** The circuit court also dismissed the two Doe defendants, who were unnamed abortion providers, for lack of personal jurisdiction. This ruling has not been appealed.

**7.** The Government Respondents argue that Ms. Doe has not preserved her right to appeal the dismissal of Count V, her Free Exercise Clause claim. In response, Ms. Doe references the first point, arguing that her right to protect her religious freedom under RFRA "is at least coextensive with her right to protect her religious freedom" under the Free Exercise Clause. In addition, Ms. Doe plainly alleges in her brief that if this Court rejects her RFRA claim, then transfer to the Missouri Supreme Court of her constitutional claims is required. While it may have been preferable for Ms. Doe to assert her constitutionally based Free

nary review that her constitutional claims are real and substantial, the case requires transfer.

■ The Missouri Supreme Court's "exclusive appellate jurisdiction is not invoked simply because a case involves a constitutional issue. Instead, [its jurisdiction] is invoked when a party asserts that a state statute directly violates the constitution either facially or as applied." *McNeal v. McNeal-Sydnor*, 472 S.W.3d 194, 195 (Mo. banc 2015). To determine whether a constitutional claim is real and substantial, this Court makes "a preliminary inquiry as to whether it presents a contested matter of right that involves fair doubt and reasonable room for disagreement." *Thompson v. ICI Am. Holding*, 347 S.W.3d 624, 634 (Mo. App. W.D. 2011) (citations omitted). That an issue presented is of first impression does not necessarily make it real and substantial, particularly where it "is so legally or factually insubstantial as to be plainly without merit." *Id.* Still, the issues in this case appear to us to be of first impression and to present a contested matter of right involving fair doubt and reasonable room for disagreement.

■ Ms. Doe has alleged that Missouri's Informed Consent Law unconstitutionally fosters an excessive government entanglement with religion in violation of the Establishment Clause. In this regard, she claims that the sole purpose of the law is to indoctrinate pregnant women into the belief held by some, but not all, Christians that a separate and unique human being begins at conception. Because the law does not recognize or include other beliefs, she contends that it establishes an official religion and makes clear that the state

disapproves of her beliefs. *See School Dist. of Grand Rapids v. Ball*, 473 U.S. 373 389, 105 S.Ct. 3216, 87 L.Ed.2d 267 (1985) ("Government promotes religion as effectively when it fosters a close identification of its powers and responsibilities with those of any—or all—religious denominations as when it attempts to inculcate specific religious doctrines. If this identification conveys a message of government endorsement or disapproval of religion, a core purpose of the Establishment Clause is violated."), *overruled on other grounds by Agostini v. Felton,* 521 U.S. 203, 235, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997). On preliminary review, we believe that Ms. Doe's Establishment Clause claim is real and substantial and not merely colorable.

■ As to her Free Exercise claim, Ms. Doe asserts an unconstitutional burden on her rights and the lack of a compelling governmental interest on several grounds. For example, she alleges that the ultrasound required by law is not medically necessary and interfered with her bodily integrity. She claims that the preconditions violated her right to make her abortion decision freely, voluntarily, and without coercion in view of their effect of causing her guilt and shame for seeking an abortion. She alleges that she had to spend time earning the money to pay for a procedure and for lodging during a waiting period, neither of which are medically necessary. She also claims that the law's seventy-two-hour waiting period imposed a restriction on her sole authority to decide "whether, when and how to proceed with" a medical procedure. She further alleges that the Informed Consent

Exercise claim in a separate point, Ms. Doe has not abandoned that claim by expressing the view that the Missouri Supreme Court has exclusive jurisdiction over the claim. Thus, we

address both of Ms. Doe's constitutionally based claims solely to determine whether they are real and substantial or merely colorable.

Law required that she receive a Booklet which includes a prominently displayed statement: "The life of each human being begins at conception. Abortion will terminate the life of a separate, unique, living human being." The law requires that she sign a form certifying the Booklet's receipt, and a copy of this document is retained in the abortion facility's permanent files for seven years. §§ 188.027.3 & 188.060. While the Government Respondents contend that the law does not require anyone to read the Booklet, it is unclear at the pleading stage whether the act of certifying receipt of material that is objectionable on religious grounds before a recipient may undergo a medical procedure constitutes a substantial burden on the exercise of religion. The U.S. Supreme Court did not rule on the merits of a claim that completing the government's form to opt out of the Affordable Care Act's requirement that contraceptive coverage be provided in employer health insurance plans constitutes a substantial burden on a religious plaintiff's beliefs, but it also did not dismiss it out of hand at the pleading stage. *Zubik v. Burwell*, —— U.S. ——, 136 S.Ct. 1557, 1560, 194 L.Ed.2d 696 (2016).[8] Ms. Doe's Free Exercise claim also appears on preliminary review to present a contested matter of right involving fair doubt and reasonable room for disagreement.

Neither the Missouri Supreme Court nor the U.S. Supreme Court has considered whether a Booklet of this nature, an Ultrasound, an Audible Heartbeat Offer, and a seventy-two-hour Waiting Period violate the Religion Clause rights of preg-nant women who do not believe in the "Missouri Tenet." The U.S. Supreme Court opined in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 877-78, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), that state measures designed to persuade women to choose childbirth over life "will be upheld if reasonably related to that goal" and where they do not constitute "a substantial obstacle to the woman's exercise of the right to choose," but it did not consider the state's informed-consent requirements in the context of the Religion Clauses. In *Reproductive Health Services of Planned Parenthood of St. Louis Region, Inc. v. Nixon*, 185 S.W.3d 685, 687 (Mo. banc 2006), the court upheld the constitutionality of a twenty-four-hour waiting period, but did not consider whether a seventy-two hour wait violated a woman's Free Exercise or Establishment Clause rights. We would also note that a divided Eighth Circuit has upheld, against a First Amendment compelled-speech challenge, a South Dakota law requiring that physicians inform their patients that an "abortion will terminate the life of a whole, separate, unique, living human being" and "the pregnant woman has an existing relationship with that unborn human being." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 726 (8th Cir. 2008).

The Government Respondents are correct that the the courts have ruled that the state may favor childbirth. Existing precedent, however, does not address whether the Informed Consent Law imposes concrete regulations on conduct that impermissilby interfere with Religion Clause in-

---

**8.** As noted in the Third Circuit Court of Appeals' decision, under consideration by the U.S. Supreme Court in *Zubik v. Burwell*, —— U.S. ——, 136 S.Ct. 1557, 194 L.Ed.2d 696 (2016), the lower federal district courts had determined that self-certification, which triggered a third party's obligation to provide contraceptive coverage, did impose a substantial burden on the religious employers seeking to opt out of this part of the Affordable Care Act. *Geneva Coll. v. HHS Sec'y*, 778 F.3d 422, 432-34 (3d Cir. 2015) (reversing grant of preliminary injunction), *vacated and remanded by Zubik*.

terests. *See Webster v. Reproductive Health Services*, 492 U.S. 490, 506-07, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989) (where the U.S. Supreme Court refused to consider whether the preamble to Missouri's abortion law was constitutional, because in itself the statement about when human life begins did not regulate conduct "in some concrete way").[9] Accordingly, whether the Informed Consent Law violates Ms. Doe's rights under the Religion Clauses poses a real and substantial question of first impression.

### Conclusion

Because we have determined on preliminary review that Ms. Doe's claims challenging the validity of certain sections of the Informed Consent Law under the Religion Clauses are real and substantial and not merely colorable, we order transfer to the Missouri Supreme Court.

Alok Ahuja, P.J., and Cynthia L. Martin, J. concur.

9. In his dissenting opinion in *Webster*, Justice John Paul Stevens contended that the preamble statements concerning when life begins were "invalid under the Establishment Clause," because those statements constituted "an unequivocal endorsement of a religious tenet of some but by no means all Christian faiths, [and] serve[] no identifiable secular purpose." *Webster v. Reproductive Health Servs.*, 492 U.S. 490, 566-67, 109 S.Ct. 3040 (Stevens, J., dissenting) (footnote omitted). As noted in the text, the *Webster* majority found it unnecessary to address this issue, since the statutory preamble at issue "d[id] not by its terms regulate abortion or any other aspect of [abortion providers'] medical practice." *Id.* at 506, 109 S.Ct. 3040. While Justice Stevens's views did not garner the concurrence of any colleagues, they nevertheless indicate that the Establishment Clause issue that Ms. Doe raises in the context of the Booklet involves fair doubt and reasonable room for disagreement.